UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRY MICHAEL REYNOLDS, SR.,

       Plaintiff,

       v.　　　　　　　　　　　　　　　　　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　12-CV-1167S
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

      1.    Plaintiff Terry Michael Reynolds, Sr., challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since November 2, 2009, due to a number of medical conditions, including coronary artery disease, emphysema, asthma, hypertension, and back and ankle pain. Plaintiff contends that his impairments render him unable to work, and thus, that he is entitled to disability benefits under the Act.

      2.    This is the second time this case is before this Court. Plaintiff filed an application for disability benefits and supplemental security income on May 7, 2010, which was administratively denied on October 12, 2010. At Plaintiff's request, ALJ Maryellen Weinberg then held a hearing on September 20, 2011, at which Plaintiff appeared with counsel and testified. One month later, on October 21, 2011, ALJ Weinberg issued an unfavorable decision. Plaintiff then sought review before the Appeals Council, which denied review on October 1, 2012. Thereafter, Plaintiff filed a complaint seeking further review in this court on November 26, 2012, which resulted in a stipulation to remand for

1

another *de novo* determination because portions of the hearing before ALJ Weinberg were inaudible, preventing the preparation of a transcript. (Docket Nos. 1, 6.)

3. On remand, the case was assigned to ALJ Robert Harvey, who conducted a *de novo* hearing on April 14, 2015. Plaintiff again appeared with counsel and testified. On May 21, 2015, ALJ Harvey found that Plaintiff is not disabled under the Act. On June 3, 2015, Plaintiff's counsel moved for additional time to seek review before the Appeals Council, but it appears that Plaintiff never perfected that application. Ultimately, Plaintiff sought review in this court for a second time, filing a new complaint (17-CV-224) that he later voluntarily dismissed considering this Court's retention of jurisdiction over the proceedings under this case number. (See Docket No. 11.) On September 26, 2017, Defendant filed the transcript of proceedings before ALJ Harvey. (Docket No. 12.) The parties then filed motions for judgment on the pleadings, which this Court took under advisement without oral argument. (Docket Nos. 13, 17.) For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case is remanded to the Commissioner of Social Security for further administrative proceedings consistent with this decision.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since May 17, 2010 (R. at 12);[1] (2) Plaintiff's chronic obstructive pulmonary disease (COPD), asthma, hypertension, coronary artery disease (CAD), left ankle fracture, low back pain, degenerative disc disease of cervical spine, fracture to right clavicle, multiple rib fractures, and left wrist carpal tunnel syndrome are severe impairments under 20 C.F.R. § 416.920(c) (R. at 12); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 13); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567 (c) and 416 (c), with certain exceptions (R. at 15);[2] (5) Plaintiff has no past relevant work and has a limited education in special education classes and is able to communicate in English (R. at 22); and (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 22). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act since May 17, 2010, the date the application was filed. (R. at 10, 23.)

10. Plaintiff maintains that remand is required for two reasons. First, he argues that remand is necessary to permit proper consideration of a post-hearing assessment completed by Thomas McTernan, Jr., M.D. Second, he argues that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence because the

---

[1] Citations to the underlying administrative record are designated as "R. at ___."

[2] The ALJ found that Plaintiff retained the RFC for light work, except that he cannot work in areas with unprotected heights; cannot work around heavy, moving or dangerous machinery; cannot work in areas where he would be exposed to excessive pulmonary irritants; no climbing ropes, ladders or scaffolds; no crawling; cannot work in areas where he would be exposed to cold and dampness; occasional limitations in bending, climbing, stopping, squatting, kneeling and balancing; occasional limitations in the ability to handle (gross manipulation) and occasional limitations in pushing and pulling with the upper extremities. (R. at 15.)

5

ALJ relied on stale evidence and failed to adequately explain the basis for his findings. These arguments are discussed in turn.

11. Plaintiff first contends that remand is required to permit proper consideration of a post-hearing assessment completed by Thomas McTernan, Jr., M.D. After the ALJ's unfavorable decision, Plaintiff moved before the Appeals Council for more time to file exceptions to the decision. (R. at 6.) On June 15, 2015, the Appeals Council extended Plaintiff's time to submit exceptions and informed him that it would not act for 30 days to allow for his submission. (R. at 4-5.) Thirty days then passed with no submission from Plaintiff.

12. Plaintiff then made a series of untimely submissions to the Appeals Council, two being relevant here.[3] First, on July 27, 2015, Plaintiff submitted a July 24, 2015 employability assessment, in which Dr. McTernan opines that Plaintiff has permanent medical conditions—disc herniation; anxiety; COPD; coronary artery disease—that render him unable to work. (R. at 1-3.) Second, on November 14, 2016, Plaintiff submitted written exceptions to the ALJ's decision and a request for an extension of time to commence a civil action. (R. at 770-772.) On July 11, 2017, the Appeals Council extended Plaintiff's time to commence a civil action *nunc pro tunc* to March 13, 2017, but it did not address his exceptions to the ALJ's decision or any of the medical evidence he submitted. (R. at 767-769.)

---

[3] There is confusion in the record concerning Plaintiff's submissions to the Appeals Council. The plaintiff here is Terry M. Reynolds, Sr., born January 31, 1965. (R. at 35.) Yet certain records submitted to the Appeals Council relate to a Terry Reynolds (no "Sr.") born May 17, 1988. (See, e.g., R. at 774-777.) These records include those submitted on April 7, 2016, from Brian A. Malta, M.D. (Lakeshore Orthopedic Group, PC), and those submitted on March 21, 2016, from Dr. McTernan. (R. at 773-777, 780.) Although Plaintiff testified that he has a son (R. at 35), it is unknown to whom these records relate. They do not, however, appear to relate to Plaintiff.

13. Plaintiff maintains that the Appeals Council should have considered the additional evidence and rendered a decision. In the alternative, he argues that Dr. McTernan's July 24, 2015 assessment constitutes new and material evidence that the Commissioner must consider on remand.

14. The Appeals Council will review a case, *inter alia*, if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470 (a)(5). "Evidence is material if it is (i) relevant to the time period for which benefits have been denied and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." McIntire v. Astrue, 809 F. Supp. 2d 13, 21 (D. Conn. 2010).

15. In evaluating whether additional evidence relates to the period on or before an ALJ's decision, the substance, not the timing, of the additional evidence controls: if the additional evidence relates to the relevant period, even if it post-dates that period, it is no less probative. See Pulos v. Comm'r of Soc. Sec., No. 1:18-CV-248 EAW, 2018 WL 5801551, at *6 (W.D.N.Y. Nov. 5, 2018) ("[m]edical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing"). Conversely, the Appeals Council is not obligated to consider evidence that does not relate to the relevant period but instead relates to the claimant's functioning at some other point. See id. New evidence submitted to the Appeals Council following an ALJ hearing becomes part of the administrative record for judicial review. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).

16. As to Plaintiff's first contention—that the Appeals Council should have considered the additional evidence in the first instance—this Court finds that Plaintiff has failed to demonstrate good cause for why he did not timely submit the evidence for consideration. Plaintiff moved for and was granted a 30-day extension of time to file exceptions to the ALJ's decision with the Appeals Council. But Plaintiff failed to thereafter make any timely submissions. Instead, he haphazardly filed late submissions over the course of nearly 18 months, culminating in the need to move for an extension of time to file a civil action. (R. at 770-772.) In light of Plaintiff's failure to act diligently, this Court cannot find error in the Appeals Council's failure to consider the additional evidence.[4]

17. As to Plaintiff's second contention—that this Court should remand this case for the Commissioner to consider the additional evidence—this Court finds that the additional evidence is not material because it does not relate to the relevant period before the ALJ. The ALJ rendered his decision on May 21, 2015. (R. at 23.) Dr. McTernan's July 24, 2015 employability assessment concludes that Plaintiff "is not able to work at all *at this point*" and "is *no longer* able to work." (R. at 3.) Nothing in that assessment indicates that it relates to the period before the ALJ. Rather, the assessment reflects Dr. McTernan's present impression of Plaintiff's condition on the date he completed the assessment, nearly two months after the ALJ's decision. Remand on this basis is therefore not warranted.

---

[4] Plaintiff's reliance on Farrell v. Berryhill in support of his contention that the Appeals Council should have considered his additional evidence because its communications to his counsel were confusing is unavailing. 16-CV-509-LJV-MJR, 2017 WL 3142097 (W.D.N.Y. May 16, 2017). The issue in Farrell was whether the nature of correspondence received from the Appeals Council supported a claim for equitable tolling of the statute of limitations after the Appeals Council denied the plaintiff's request for an extension of time to file a civil action. Here, however, the Appeals Council granted Plaintiff's extension request *nunc pro tunc*, so the timeliness of his civil action is not at issue.

18. Plaintiff's second argument in favor of remand is that the ALJ's RFC finding is not supported by substantial evidence because the ALJ relied on stale evidence and failed to adequately explain the basis for his findings. The government contends that the ALJ's conclusions are supported by substantial evidence, but it does not address Plaintiff's staleness arguments.

19. The ALJ conducted Plaintiff's hearing on April 14, 2015. (R. at 31-68.) The only medical opinion evidence considered by the ALJ was that of Joseph Prezio, M.D., dated June 29, 2010, and June 20, 2011. (R. at 17-18.) Although the ALJ also recounted raw medical and diagnostic evidence post-dating this opinion evidence (R. at 18-22), there is no medical opinion evidence that post-dates June 20, 2011, leaving a gap of almost four full years between the last medical opinion and the hearing.

20. An ALJ has the responsibility to determine a claimant's RFC based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c). The claimant has the burden to demonstrate functional limitations that preclude any substantial gainful activity. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3); SSR 96-4p, 1996 WL 374187; see also Bowen, 482 U.S. at 146 n.5. Further, the claimant must present sufficient evidence showing functional limitations during the relevant time period. See Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989).

21. The law provides that an ALJ is permitted to assess RFC when the record contains enough evidence from which an RFC can be determined. See Tankisi v. Comm'r of Soc. Sec., 521 Fed. App'x 29, 34 (2d Cir. 2013) (summary order). In other words, a medical source statement or formal medical opinion is not necessarily required for an ALJ

to make an RFC determination.  See id.; cf. Pellam v. Astrue, 508 Fed. App'x 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where the ALJ relied on physician's findings and treatment notes).  If an ALJ bases his or her RFC determination on medical treatment notes and diagnostic records, it is not necessary for the ALJ to seek additional medical information regarding a plaintiff's RFC.  See Rosa, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information." (internal quotation marks omitted)).

22. An ALJ, nonetheless, is obligated to fully develop the administrative record when appropriate.  Because benefits proceedings are non-adversarial, an ALJ must fully develop the administrative record, regardless of whether the claimant is represented by counsel.  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) and Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)).  This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination.  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (relying on 20 C.F.R. § 404.1512 (d)-(f) (1995)).

23. When there are deficiencies or gaps in the record, or when an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to develop the record by seeking additional information.  Rosa, 168 F.3d at 79.  For example, an ALJ should obtain a consultative examination "when the evidence as a whole is insufficient to allow [him or her] to make a determination or decision on [the] claim" or "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [his

or her] ability to work, but the current severity of [the claimant's] impairment is not established." 20 C.F.R. § 404.1519a (b).

24. This Court finds that here, the ALJ was obligated to develop the record for several reasons due to the 4-year gap between the last medical opinion and the hearing. First, the ALJ gave "some weight" and "little weight" to the only two medical opinions in the record, leaving minimal, if any, medical opinion evidence supporting his RFC findings. (R. at 17-18.) Second, because Plaintiff's impairments include several degenerative conditions, the ALJ should have developed the record to include a recent medical opinion concerning how those conditions may have (or not) progressed to limit Plaintiff's ability to work. For example, Dr. McTernan's July 24, 2015 employability assessment, completed just two months after the hearing, reflects several areas of very limited physical and mental functioning, and several more areas of moderate physical and mental functioning. (R. at 3.) Third, while the ALJ recounted and considered more timely medical findings and diagnostic test results (R. at 19-22), an ALJ cannot evaluate raw medical data and extrapolate his own RFC determination. See Skupien v. Colvin, No. 13-CV-403S, 2014 WL 3533425, at *5 (W.D.N.Y. July 16, 2014). Finally, to the extent the ALJ relied on Dr. Prezio's two medical opinions at all, those 4-year-old opinions were stale and could therefore not support the RFC determination. See Griffith v. Astrue, 08-CV-6004 CJS, 2009 WL 909630, at *9 (W.D.N.Y. Mar. 31, 2009) (finding that "stale" opinions do not constitute substantial evidence). Remand is therefore required.

25. Remand is also required because the ALJ failed to sufficiently explain his RFC determination. When a plaintiff challenges an RFC determination, the court must examine "whether the ALJ discussed the claimant's work-related functions and limitations

11

in his or her RFC analysis," and also "whether, regardless of how the ALJ's RFC assessment was expressed, it was supported by substantial evidence." Carrigan v. Astrue, No. 2:10–cv–303, 2011 WL 4372651, at * 8 (D. Vt. Aug. 26, 2011.) As pertinent here, an ALJ "must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function." Novak v. Astrue, No. 07 Civ. 8435(SAS), 2008 WL 2882638, at *3 (S.D.N.Y. July 25, 2008). Here, the ALJ's RFC discussion is entirely conclusory: it simply recounts the medical evidence and concludes that Plaintiff can perform light work with some limitations. (R. at 15-22.) There is no discussion of how the evidence supports the ALJ's conclusions or any discussion of Plaintiff's ability to maintain sustained work activity. Remand is therefore necessary on this basis as well.

26. After carefully examining the administrative record, this Court finds cause to remand this case to the Commissioner of Social Security for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: May 8, 2019
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge